All rise. The United States Court of Appeals to the Federal Circuit is now open for session. I thank the United States and the Honorable Court. Please be seated. We have four cases today, and we will begin with number 161365, Becker v. OPM. Ms. Knapp? Yes, Your Honor. May I begin? Yes, please. May it please the Court. Janet Knapp appearing on behalf of Amanda Becker. We are petitioner in this matter. I will be speaking for 13 minutes and reserve two minutes for rebuttal. The standard of review here is deferential. Petitioner understands that. The Court must affirm the decision of the Merit Citizens Protection Board unless it was arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with the law. If it was obtained without appropriately following the requisite procedures, or if it's unsupported by substantial evidence. Petitioner here believes that the decision was arbitrary, capricious, and an abuse of discretion, and that the Court failed to consider an important aspect of the case, which, as I will indicate later and as indicated in my pleadings, is the United States Supreme Court decision in Oberfeld. I don't know if it makes any difference. I guess I had understood your argument to be that not so much arbitrary and capricious or abuse of discretion, but contrary to law, namely the Fifth Amendment, which the administrative judge said, I don't get to decide that because we don't, as an agency, we don't get to declare a statute unconstitutional. So you're making your constitutional argument here in court for the first time. That is true. That is true, and I guess that is part of the fail to consider an important aspect of the case, and that is that she was denied, that Petitioner was denied her constitutional rights because the Court refused to rule on the statute. But understanding, I understand that the Court acted within its authority, within its jurisdiction, because the Court, had the Court been able to rule on this. The administrative, the board you mean. Yeah, had Judge Brandenburg been able to rule on this issue, I think she would have. The testimony. The MSP didn't fail to consider it, it just didn't have that authority. Yes, that's what. So let's hear your argument on the constitutional issue. Every law is based on a reason or alleged reasons for its passage. The nine-month rule was passed to prevent sham marriages. So you either have to be married nine months, have to have a child in common, or you have to have an accident in order to supplant the rule. We don't have an accident here because his death, while accidental and in the course of an experimental treatment, or an aggressive treatment actually, was more so, it was an accident in that he was not expected to die, but was considered an accident under the law. The government says that the statute that's in question here didn't impede either the right to marry or not marry, or the right to procreate or not procreate. And therefore, those fundamental rights are not impacted. This statute simply addresses the financial consequences of a status of marriage. What's wrong with that argument? Well, the statute, when it does not impair, it does not prevent marriages, like the same-sex marriages that were allowed in Oberfeld. That's clear. It doesn't force someone to procreate or not procreate. Our position is that it infringes on the right because Oberfeld, when you read the basis for Oberfeld, it's not based on procreation because in a same-sex couple, you're not going to have genetic material from both people in creating a child. Can I frame the question this way? Go back to, is it 1975? Weinberg against Southley is on its facts closer than anything else. And the court there said, admittedly, things have happened since 1975, but the court there addressed essentially the same nine-month rule with a kind of exception for children and said even though we have said in various cases, Stanley against Illinois, Lafleur, that there are fundamental rights kind of in the picture here having to do with marriage and family matters, when the question is congressional definition of the circumstances in which government money would be paid out, we're not going to do a kind of strict scrutiny fundamental rights analysis. And then it proceeded to explain why even though admittedly the categories, the nine-month rule and children were admittedly imprecise in both directions as to sham marriages and so on, nevertheless this is a kind of insurance scheme and insurance uses imprecise rules. So why is this different from that? Is the standard of review different so we no longer get to do kind of rational basis review or what? The standard review is the same. It is a deferential standard of review. It's a lenient standard of review and it is the rational basis test. Quite honestly, we would not have brought this issue without the decision in Oberfell versus Hodges. And the reason for that is that case recognized that it's not just procreation, that it's also about a safety net and it's about security. And that's part of the social order. That is the underlying basis for bringing this case. As to the rational basis test, in 1974, I believe it was pre-April 9th of 1974, it was two years. And then it went to one year after 4-9-74. And then I think it was 85, 5-7-85, it went to nine months. There is nothing that is arbitrary. Well, arbitrary in the sense in which picking any single number is going to be arbitrary, but not arbitrary in the sense that it is arbitrary to pick a given number. And the Supreme Court expressly talked about that in Salfie and said there are going to be sham marriages that are longer than nine months. There are going to be perfectly non-sham marriages that are less than nine months. But the alternative to a kind of nine-month rule is administratively costly inquiry into the bona fides of particular marriages. And in this world, proxy rules that are undisputedly imprecise are reasonable. I understand what the court is saying. But here, when you look at the language that was used in Oberfeld, it talks about the safety net and it talks about financial security and the benefits of marriage in regard to financial security and that people marry for reasons other than to procreate. They marry to protect themselves. They marry to get tax benefits. There are a myriad of benefits that the state offers and the federal government offers, and a lot of those are based on marriage. And that, I think, is the differentiation. It is a different day because of the decision in Oberfeld. That is basically our position. And because of that, everything needs to be reexamined. I understand that the legislators can pick a number out of the sky, and I understand that. But Oberfeld specifically looks at finances and safety and creating a financial safety net for someone that another person loves and wants to be with. And that way, this does impair the marriage. The last thing Todd Mayberry wanted to do was die at 41. Last thing in the world. He married the love of his life. And he married her. He could have married her sooner. He married her when his test results came back good so he wouldn't burden her. He wanted to provide for her. It was important for him as her husband to provide for her. Their marriage wasn't a sham. I understand what the court is saying. Their marriage was not a sham. All I'm doing is describing what Weinberger against Salfie explained at considerable length, and unless we had a basis for saying that's no longer the governing rule, it's a little hard to see what the difference is between that case and this one. The only basis I have is the decision in Oberfeld. Because I think a new leaf has turned. I think we're going to start seeing a lot of litigation over matters like that because of that decision. Because, again, marriage is more than just appropriation. Can I ask you a question about the discovery issue? Yes. And forgive me if I should remember this from the brief, but when you sought discovery from OPM about whether OPM had waived the nine-month rule in other circumstances, did you have some evidentiary basis that you presented to think that OPM had, in fact, done so, or was it kind of an open-ended request? We would like to know. We don't have a reason to think you have, but we would like to know. Well, we had no inside information that they had such information, but the individual who did the hearing believed that it had been done. But it wasn't he had heard that it had been done in the past, but it wasn't something that we could verify. When you say he had heard, who were you referring to? I'm sorry. Todd Flood is the managing partner. Todd Flood did the hearing in Chicago with Judge Brandon Burke. Ms. Becker's counsel. Yes. He is the managing partner of my firm, and at that point he was Ms. Becker's counsel. But he did not have any evidence that there had been sort of discriminatory application of this statute. We were trying to get evidence, but we did not have any evidence to show that we could get that evidence, other than what we had been sort of told, just told by others. Would you like to reserve your rebuttal? I will. Thank you. Can you pronounce your name now? It's Onyema. Onyema. Please. May it please the Court. Petitioner raises several constitutional challenges to the duration requirement and the exception for children. However, the Supreme Court in Selphie and this Court in several decisions has considered and rejected similar challenges. Now, Ms. Becker challenges the duration requirement, arguing that it violates the due process clause of the Fifth Amendment. However, under Selphie, the Court was clear that there is no heightened scrutiny that applies to the legislator or Congress' decision of whether or not to subsidize the exercise of a fundamental right, and Oberfeld does not change that result. It does not involve federal subsidies. Instead, it questions whether or not same-sex couples have the right to marry. The Court did discuss a number of reasons why a same-sex couple would want to get married and did note that there are sometimes benefits that attach. However, ultimately, that is a separate question as to why a couple may choose to marry. It's separate and distinct from whether or not Congress would have a legitimate basis or a legitimate interest in trying to ferret out sham marriages for purposes of who should be able to receive federal subsidies or not. The Supreme Court, over time, has made that clear in other cases, for example, the Reagan case as well, noting that they're not required to subsidize the exercise of a fundamental right, and that requirement is not subject to strict scrutiny. Selphie talked about the non-contractual nature of the benefit. What to make of that for purposes of applying to this case? Certainly. Well, the Supreme Court in Selphie is essentially stating that it is subject to a due process review as opposed to, for example, a breach of contract claim. I know the petitioner had raised, in terms of trying to distinguish Selphie, noting that I believe there was the McNeil case where that distinguished between non-contractual benefits and contractual benefits, and that was a jurisdictional question as to whether the Court of Federal Claims could consider the denial of benefits or whether that was a constitutional issue. So Selphie simply states in that context that if an individual is denied a benefit, then it is a due process analysis. However, without there being an infringement on a fundamental right or without it involving a classification across suspect lines, the analysis is conducted under a rational basis review. If I'm remembering right, the post-Selphie case in a different context, against somebody or other, said we're going to stick with rational basis if, even though it was money, right, a government benefit, if we don't see any reasonable likelihood of a direct and substantial impairment of the underlying fundamental right, their kind of right of association, here would be other rights. How do we determine in this case whether the denial of the survivor benefits has a direct or substantial effect on the choice to marry, the choice whether to have children? Certainly, Your Honor. And I think the Link case is very similar to the Sablocki decision as well, where there the Wisconsin legislator prohibited individuals who had not paid child support to get married without getting court approval first. And so I think the question becomes, is there enough of an impairment or a curtailment of the ability to actually exercise the right? So are there a number of loopholes, for example, that the petitioner must jump through before they can actually exercise their right to marry? And that could be a potential infringement on the right. However, here, the petitioner and others that are similarly situated are free to choose whether or not they want to get married. They're free to choose whether they want to procreate. The only question is whether, on the back end, the federal government is going to be subsidizing their ability to exercise that right. So there would need to be some sort of infringement on the actual underlying right, which has not occurred here. Briefly as well, Ms. Becker challenges the duration requirement, or the exception for children. And the legislator hasn't provided any explanation for why there is that exception. However, in Salfie, the Supreme Court noted that there could be a conceivable basis for having that exception, and that would be the indication that a couple would be more likely to not engage in a sham marriage if they were willing to have children. And so here again, the petitioner cannot meet her burden to show that the statute is invalid, applying a rational basis analysis. And that exception really doesn't apply here. There are no children involved. That's correct. The petitioner argues that it doesn't apply, but she does argue that there are distinctions that are being made between couples that choose to have children and don't, and that it creates a due process issue. But I would agree that it's not relevant for the court's analysis. If OPM had been engaged in a practice of disregarding, waiving this rule, would that be a basis for a claim here? Respectfully, it would not, Your Honor, because ultimately the board is required to determine whether or not OPM followed the statute, and there seems to be no dispute that Ms. Becker did not meet the statutory requirements. So the fact that OPM may have failed to follow the statute in other instances would not serve as some sort of basis for allowing Ms. Becker to claim that she should be able to get the annuity in this case. Wouldn't it provide a basis for her to argue that the agency is applying the law arbitrarily? Well, in terms of the jurisdiction of the board, I mean the board could consider whether or not the application of a statute is done in a constitutional manner, but the board itself still is bound by what the statute says and ensuring that it's being applied in a constitutional manner. So I would say that that would not be the case, Your Honor. If the court has no further questions, I would respectfully request that the court affirm. Thank you. I'll be very brief, Your Honors. I think there was a direct and substantial impairment when you look at the language in Oberfell, because, again, Oberfell talks about the financial security and marriage as a financial security safety net for people, and that's what happened here. As to the issue of children in common, there is a right not to procreate, as well as a right to procreate. And, in essence, Ms. Becker is being punished for not procreating. I will say that the record shows that Mr. Mayberry had talked to the doctor, Dr. Mary Volpel, about whether he should harvest his sperm so he could perhaps give Ms. Becker a child. But he thought he was going to live. Bottom line is he thought he was going to live. As to the discovery issue, if OPM isn't following their mandate, that's not a case that would, in all likelihood, get to the Merit System Protection Board. If OPM does not file their mandate, then they are violating their responsibility to apply the statute in an even-handed manner, and that is something that we should be able to challenge if we had access to that information. And that would be presented, and then we would be arguing, probably arguing again before this court, because the administrative court would follow the statute as is its responsibility, and we would again be challenging it before this court. Thank you. Thank you very much. Case is submitted.